UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY CARTER,

        Plaintiff,        Case No. 1:15-cv-369

v.        Hon. Gordon J. Quist

RONALD GRAMBAU,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendant's motion for summary judgment (docket no. 44).

    **I.**    **Plaintiff's claim**

The incidents occurred at the Oaks Correctional Facility (ECF). Plaintiff's complaint alleged that defendant Prisoner Counselor Ronald Grambau violated his First Amendment right to access the courts by refusing to file plaintiff's application for leave to appeal a post-conviction motion for relief from judgment to the Michigan Court of Appeals. Compl. (docket no. 1, PageID.8). Plaintiff was allowed to file an amended complaint on January 27, 2016, in which he alleged as follows.

In 2010, plaintiff was convicted for felony-murder, carjacking, assault with intent to rob while armed, and felony-firearm. Amend. Compl. (docket no. 41, PageID.300). After exhausting his direct appeal in the state courts, plaintiff filed a habeas corpus petition in the Eastern District of Michigan August 27, 2013. *Id.* Defendant has identified this action as *Carter v. Curley*,

2:12-cv-13785 (E.D. Mich.). *See* Habeas Order (docket no. 45-3). On June 24, 2013, Judge Gerald E. Rosen granted plaintiff's request to hold the habeas action abeyance for the purpose of filing a motion in the state court for relief from the judgment under MCR 6.500. *Id.* The state trial court denied his motion on October 1, 2013. *Id.* at PageID.301. According to plaintiff, he had to file a delayed application for leave to appeal the trial court's order to the Michigan Court of Appeals (sometimes referred to as the "delayed application" or the "application") "because [he] missed the filing deadline due to his participation in the Michigan Department of Corrections (MDOC) 'Legal Writers' program." *Id.* Pursuant to MCR 7.205(f)(3), plaintiff had six months to file a delayed application, with the filing deadline being April 1, 2014. *Id.* The delayed application was prepared by the Legal Writers Program and delivered to plaintiff in "March of 2014." *Id.*

Beginning on March 24, 2014, defendant conducted scheduled legal rounds. *Id.* at PageID.302. According to plaintiff, defendant did not respond to his request to pick up the delayed application:

> While Grambau was conducting his routine and scheduled legal rounds, Plaintiff Carter called Grambau to his cell door through the crack of his door loud and clear in an attempt to file his "Application for Leave to Appeal" to the Michigan Court of Appeals. But all to no avail. At no time did Defendant Grambau acknowledge the fact that Plaintiff Carter was trying to exercise his constitutional right to "access to the courts" and file an "Application for Leave to Appeal" in the Michigan Court of Appeals via an expedited legal mail from [sic].

*Id.*

On March 24, 2014, plaintiff sent defendant a letter ("kite") requesting that he be called out to file the application. *Id.* at PageID.303. However, according to plaintiff:

> On March 25, 2014, defendant Grambau conducted another routine round and scheduled "legal rounds" on B-Wing lower housing Unit-3. And once again, Plaintiff Carter called Grambau to his cell door loud and clear, and this time, Plaintiff

2

> specifically explained to Grambau that he had some very important "legal papers" he had to file to the Michigan Court of Appeals before the 1st of April or the Michigan Court of Appeals would not grant his "Application for Leave to Appeal" because it would then be considered "untimely filed." However, Defendant Grambau simply acted like he did not hear Plaintiff's call for his assistance in filing his "Application to the Michigan Court of Appeals["] via an expedited legal mail form and kept walking by his cell.

*Id.*

On March 26, 2014, plaintiff wrote another kite to defendant, explaining in "more detail" about the six month filing deadline. *Id.* However, defendant did not respond to it. *Id.*

On March 27, 2014, while defendant was conducting the legal round plaintiff made another attempted to file the application.

> This time, Defendant Grambau stopped directly in front of Plaintiff Carter's cell door and made direct eye contact with him. However, Defendant Grambau did not make any attempt to take Plaintiff Carter's application for leave to appeal for filing to the Michigan Court of Appeals. Instead, Defendant Grambau stated loud and clear "I'm not taking anything. I refuse to do anything for a prisoner who wants to write frivolous grievances on me and think they run things in this unit. You don't run a thing, so if you want your [']legal papers['] filed on time, you'd better do it yourself because I'm not going-to do it."

*Id.* Plaintiff told defendant about the application and the need to have some sort of "proof of filing." *Id.* at PageID.303-304.

Plaintiff had previously written a Step I grievance against defendant on March 7, 2014. *Id.* at PageID.304. When plaintiff threatened to write another grievance against defendant on March 27th "for depriving him of his first amendment right of access to the courts" defendant allegedly stated,

> I don't get angry, I just get even, so you can go-ahead and write whatever it is you think you need to write. I'm still not going to take your legal papers for processing and filing them with the courts, Mr. Carter. So you can write all of the grievances you want. Who do you think they're going to believe, me or some prisoner?

3

*Id.* Later that day, plaintiff sent defendant another kite, four copies of the application for leave to appeal and an oversized legal envelope, requesting that defendant accept and process the application. *Id.*

Plaintiff alleged that legal mail is governed by "MDOC Policy Directive 05.03.118 CFA P (G) and (H)" which provides:

> Housing unit Rum, Arus, or case managers must be available to process legal mail and court filing fees by the 10:00 a.m. deadline of every business day. Every prisoner must have access to a Rum, Arus, or case Manager every business day, e.g., access must be provided to prisoners on worn [sic] assignments and on top lock.

*Id.* It is unclear to the Court where plaintiff obtained this language. He did not attach a copy of the policy directive to his amended complaint and the Court has not found this provision in MDOC Policy Directive 05.03.118 ¶¶ G and H (eff. 09/14/09).

Plaintiff alleged that his delayed application for leave to appeal would have been timely filed if defendant had accepted and processed it. *Id.* Plaintiff pursued the matter with other prison employees, and eventually sent a kite to a supervisor, RUM Pierson, requesting that he obtain a copy of the delayed application from defendant. *Id.* at PageID.305. A few days later, plaintiff received a response from defendant "claiming [plaintiff] never gave him any legal papers." *Id.* As of the date of the amended complaint, defendant neither returned the delayed application to plaintiff nor filed it in the Michigan Court of Appeals. *Id.* As a result of defendant's actions, plaintiff stated that he missed the six-month deadline to file the application for leave to appeal and "is now unable to assist [sic] a 'nonfrivolous claim' in the Michigan Court of Appeals, rightfully appeal his convictions, or exhaust his state remedies and/or his unexhausted claims in the lower courts as the federal courts require all appellants to do before bringing their claims to their court for relief." *Id.*

4

The amended complaint is silent with respect to the status of plaintiff's federal habeas action. Defendant has provided copies of two orders which reflect that the stay was lifted and that the habeas action was dismissed. On January 12, 2015 (about three months before filing this civil rights action), the federal court entered an order granting plaintiff's motion to lift the stay, directing the Eastern District's Clerk to reopen case, requiring plaintiff to file amended petition, and requiring the respondent to file a responsive pleading. *See* Habeas Order (Jan. 12, 2015) (docket no. 45-3). The court's order noted plaintiff's assertion that he was unable to file a timely application for leave to appeal in the appellate court, stating in pertinent part:

> Petitioner filed a motion for relief from judgment in state court within thirty days of the issuance of the stay order. The trial court denied the motion. Petitioner states that he then diligently attempted to file a timely application for leave to appeal in the Michigan Court of Appeals, but prison officials refused to process his legal papers. The time for filing an application for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals has now passed. Petitioner, therefore, has no other available remedy in state court and seeks to lift the stay in this matter. The Court will grant the motion.

Habeas Order (Jan. 12, 2015). Plaintiff was directed to file an amended petition within 60 days from the date of the order. *Id.* However, he never filed an amended petition. Over one year later, the federal court dismissed the petition without prejudice. *See* Habeas Order Dismissing petition for writ of habeas corpus without prejudice (Feb. 11, 2016) (docket no. 45-4). About two weeks before the dismissal of his amended habeas petition (i.e., January 27, 2016), plaintiff filed the amended complaint in this § 1983 action.

Plaintiff has alleged two basic claims: (1) that defendant violated his right of access to the courts with respect to a federal habeas corpus action; and (2) that defendant retaliated against

5

him when defendant refused to accept the delayed application for filing. Amend. Compl. at PageID.306.

## II. Defendant's motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a response to the motion for summary judgment.[1] The fact that there has been no response to a summary judgment motion does not mean that the motion is to be granted automatically. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). In undertaking this task, the court is not required to "blithely accept the conclusions argued in the motion." *Id.* Nor is the court required to "conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact for the non-moving party. *Id.* at 405. Finally, although plaintiff did not file a response in opposition to the motion for summary judgment, he submitted a properly verified amended complaint. This Court is required to give the verified complaint the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

---

[1] W.D. Mich. LCivR 7.2(c) states that "[a]ny party opposing a motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." About one month after the expiration of the 28-day response period, plaintiff wrote a letter to the Court's Clerk stating in part that "I have yet to recieve [sic] an order from the court requiring me to respond to the defendant's response [sic]." Plaintiff's Letter (docket no. 47). Plaintiff has never filed a responsive brief in opposition to defendant's motion. A *pro se* litigant assumes the risks and hazards that accompany self-representation. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). *Pro se* litigants, like plaintiff, are required to follow the rules of civil procedure and easily-understood Court deadlines. *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N.D. Ohio 1999). To the extent plaintiff believes that the Court has a duty to instruct him on the procedure for filing legal papers in this action, his belief is in error. "It is not the function of this Court to supervise laymen in the practice of law." *Springer v. Best*, 264 F.2d 24, 26 (9th Cir. 1959).

### B. Access to the Courts

"Prisoners have a First and Fourteenth Amendment right of access to the courts." *Sims v. Landrum*, 170 Fed. Appx. 954, 956 (6th Cir. 2006), citing *Lewis v. Casey*, 518 U.S. 343, 354 (1996). "A prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus–X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999). "In assessing whether a State has violated that right, we ask whether the claimant has demonstrated an 'actual injury,' and, if so, whether the claimant has alleged that more than mere negligence by the state actor caused the injury." *Sims*, 170 Fed. Appx. at 956, citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir.2005) and *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir.1993). To state a claim for denial of meaningful access to the courts, a plaintiff "must plead and prove prejudice stemming from the asserted violation. . . for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578. In summary, a plaintiff "must plead and prove prejudice stemming from the asserted violation." *Pilgrim*, 92 F.3d at 416.

Here, plaintiff's amended complaint alleged how defendant interfered with the habeas corpus petition and the alleged injury caused by defendant's intentional conduct. Defendant suggests that plaintiff suffered no "actual injury" because the habeas action was dismissed without prejudice due to plaintiff's failure to file an amended petition, not due to defendant's alleged interference. *See* Defendant's Brief at PageID.324-325. The Court disagrees. Plaintiff has alleged that he filed a

fedeal habeas action, that he obtained a stay to exhaust claims in state court, and that in the course of exhausting the claims, he missed a court-imposed deadline for filing the delayed application due to defendant's intentional conduct. "[M]issing a court-imposed deadline" is an example of actual prejudice enumerated by the Sixth Circuit. *See Harbin-Bey*, 420 F.3d at 578.

Furthermore, factual issues exist with respect to the alleged incidents. In his affidavit, defendant identifies his position as an Assistant Resident Unit Supervisor (ARUS) and stated that according to the unit log book, he conducted legal rounds on March 24, 25 and 26, 2014. *See* Grambau Aff. (docket no. 45-2, PageID.333). Defendant further stated that at no time during these rounds, or at any other time, did plaintiff attempt to file an "Application for Leave to Appeal" with him and that he never denied plaintiff the opportunity to send out legal mail. *Id.* Defendant also stated that he did not complete unit legal rounds on March 27, 2014, pointing out that the unit log book reflects that RUM Pierson completed those rounds. *Id.* After reviewing these documents, it appears to the Court that the unit log book pages submitted by defendant contain the rounds conducted in February 2014 (e.g., "2-27-14") not March 2014. *See* Unit log book sheets (docket no. 45-2, PageID.335-338). Based on this record, genuine issues of material fact exist with respect to whether defendant interfered with plaintiff's access to the courts. Accordingly, defendant's motion seeking summary judgment on plaintiff's access to the courts claim should be denied.

### C. First Amendment retaliation

Plaintiff alleged that defendant retaliated against him by refusing to accept his delayed application and that when defendant ultimately received it, he failed to mail it to the state court. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter

a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394.

Defendant stated that while plaintiff "has arguably established the first and second elements of his claim (protected conduct and adverse action)," plaintiff has failed to establish causation. "Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue - that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Retaliation rarely can be supported with direct evidence of intent. *Harbin-Bey*, 420 F.3d at 580. Nevertheless, a plaintiff claiming retaliation must present more than conclusory allegations of retaliatory motive. *Id.*

Here, defendant contends that plaintiff "makes nothing more than conclusory allegations of retaliation." Defendant's Brief (docket no. 45, PageID.326). However, defendant does not address those allegations or explain why they are conclusory. In his verified amended complaint, plaintiff alleged that he filed a grievance against defendant on March 7, 2014, and that when he threatened to file a grievance against defendant on or about March 27, 2014, defendant made statements connecting plaintiff's actions to his decision not to process the delayed application:

> I don't get angry, I just get even, so you can go-ahead and write whatever it is you think you need to write. I'm still not going to take your legal papers for processing and filing them with the courts, Mr. Carter. So you can write all of the grievances you want.

Amend. Compl. at PageID.303-304. Based on this record, genuine issues of material fact exist with respect to whether defendant retaliated against plaintiff by refusing to accept the delayed application

or mail it to the court. Accordingly, defendant's motion for summary judgment should be denied on this claim.

### D.   Qualified Immunity

Defendant also contends that he is entitled to summary judgment on the affirmative defense of qualified immunity.[2] Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The dispositive question is whether the violative nature of the particular conduct at issue in the lawsuit is clearly established. *See Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350.

When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the

---

[2] The Court notes that because defendant has not filed an answer in this action, he has not pled the affirmative defense of qualified immunity, but has raised it in the context of a motion for summary judgment. *See generally, Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Defendant has the burden of pleading qualified immunity in his answer . . . It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful.").

plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

In the undersigned's opinion, defendant did not meet his initial burden of "coming forward with facts to suggest that he acted within the scope of his discretionary authority" with respect to the constitutional violations alleged by plaintiff. In this case, the alleged wrongful conduct was defendant's refusal to accept the delayed application from plaintiff on March 24, 25, 26 and 27, 2014, and his refusal to mail the delayed application after March 27, 2014. While defendant's brief came forward with his version of the facts (i.e., he denied that the incidents occurred), defendant did not identify the scope of his discretionary authority to process legal mail in his position as an ARUS at ECF. *See* Defendant's Brief at PageID.329. Furthermore, even if defendant had met his initial burden, a grant of summary judgment is not warranted because genuine issues of material fact exist with respect to both of plaintiff's claims. *See* § II.B. and C., *supra*. Accordingly, defendant's claim of qualified immunity should be denied.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Grambau's motion for summary judgment (docket no. 44) be **DENIED**.

Dated: August 29, 2016  /s/ Ray Kent
　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).